## Loeffler *v.* Schmertz.   Morgan's Appeal.

[Marked to be reported.]

*Execution—Distribution—Issue under act of April* 20, 1846.

Under the act of April 20, 1846, P. L. 411, providing for an issue, upon the distribution of money arising from judicial sales, where there are material matters of dispute, it is the duty of the court of common pleas to

determine whether the facts in dispute are material, and are sufficiently set forth in the affidavit, and, if they are not so, to refuse the issue.

Where a fund for distribution arises from a sale under execution, and the affidavit shows fraud upon the part of the defendant in the execution, but fails to connect the plaintiff with the fraud, and it appears that the judgment upon which the execution is issued was not in excess of the debt due by defendant to plaintiff, an issue will not be awarded.

Argued Oct. 26, 1892. Appeal, No. 3, Oct. T., 1892, by W. F. Morgan & Co., creditors, from order of C. P. No. 2, Allegheny Co., Oct. T., 1891, No. 45, refusing an issue. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for an issue to determine the validity of a judgment confessed by William E. Schmertz to William Loeffler.

The court below filed the following opinion, by WHITE, J.:

" The affidavits on which an issue is demanded set forth many facts, which, if true, would indicate fraudulent conduct on the part of W. E. Schmertz in purchasing goods and carrying on his business when he was insolvent and must have known that fact. [But there is no averment of any fraudulent act on the part of the plaintiff, Loeffler, and no averment that the judgment given to the plaintiff was fraudulent, or that he was knowingly a party to any fraudulent acts of Schmertz.] [2] The only ground on which it is assailed is, that it was given for a larger amount than was necessary to cover his liabilities for Schmertz. [And that question is to be determined by his answer, for there is nothing to contradict the answer and affidavit of Loeffler.] [3]

" In his answer he says that when Schmertz asked him on the 13th June, 1891, to indorse notes for the amount of $13,000, he said ' he would indorse the paper to the amount of $13,000, if he, Schmertz, would secure him not only against the loss of that sum, but would also, through him, secure the firm of Robt. C. Schmertz & Co., Limited, against all loss and liability by reason of money loaned him by said firm, and indorsements then made or that might thereafter be made for him by affiant as secretary and treasurer of said firm; and secure affiant against all loss and liability individually upon all indorsements, loans and advances made or that might thereafter be made by said affiant for him; and against all loss and liability by reason

of his suretyship in said bonds mentioned or by reason of any
and all payments made by affiant to him as guardian aforesaid.
To this, Wm. E. Schmertz then and there assented and agreed.
With this understanding and for that purpose, the judgment
note was signed by the said Wm. E. Schmertz and delivered
to affiant ; whereupon affiant indorsed three additional notes,'
etc., for the $53,000.    The suretyship referred to was on bonds
of said Schmertz, as guardian of the minor children of Robt. C.
Schmertz.

" At the time said judgment of $100,000 was given, June 13,
1891, the claims and liabilities of said Loeffler for said Schmertz
were as follows :

| | |
|---|---:|
| Endorsements for R. C. Schmertz & Co., Limited, | $30,950 00 |
| Note to firm, borrowed money, . . . . | 2,500 00 |
| Individual endorsements for Schmertz, . . . | 6,000 00 |
| Debit due to Loeffler, . . . . . . | 1,200 00 |
| Endorsements of June 13, 1891, . . . | 13,000 00 |
| | $53,650 00 |
| 250 shares of stock in Standard Plate Glass Co., afterwards sold to Schmertz, . . . | 25,000 00 |
| | $78,650 00 |
| The real estate sold by W. E. Schmertz as guardian of minor children of R. C. Schmertz, . . | 22,966 66 |
| Total liabilities, . . . | $101,616, 66 |

" The loan of the 250 shares of stock of Standard Plate
Glass Co. was after the giving of the judgment note, but as
that note was expressly to cover future accommodations as well
as present liabilities, it was valid and lawful as between the
parties, and would be good against other creditors, unless they
had some intervening equities, and that does not appear and is
not averred in this case.   The stock was pledged by Schmertz
for loans he obtained, and is still in pledge.

" The amount of this stock added to the actual liabilities of
June 13, 1891, amount to more than the money realized on the
said execution and now in court.

" The plaintiff is entitled to hold his judgment as security

for his suretyship on the guardian bonds. He may not be entitled to collect that amount of money, if it can be realized on the judgment given directly to the minors or their guardian ; or, possibly, until it is absolutely certain he will have to pay it. But that question is not involved in this rule. [The only question before us is, was the judgment to Loeffler fraudulent, given for a fraudulent purpose, or fraudulently given for an excessive amount ?] [7]   I think there is no evidence that would justify such an inference. As Loeffler sets forth all the facts in the case, the amount due, if any, on this account, can be ascertained, when the time arrives, without an issue. Rule for issue discharged."

The court entered a decree Oct. 24, 1891, ordering payment of money in court to plaintiff. Appellants, creditors, appealed from the decree refusing issue.

*Errors assigned* were, inter alia, (1) in refusing an issue (2, 3, 7) portions of opinion in brackets, quoting them.

*William R. Blair*, *William S. Pier* with him, for appellant. —The fundamental error which the learned court made was in determining whether or not plaintiff's judgment was or was not fraudulent. That was not what the statute intended. The statute intends that the jury shall do that. What is committed to the court is the applicant's affidavit. If it sets out facts relevant and material to an issue on the validity of the judgment, then the court must grant the issue and at the trial submit the fact to the jury : Providence Co. v. Chase, 108 Pa. 522 Dormer v. Brown, 72 Pa. 407; Benson's Ap., 48 Pa. 159 Bichel v. Rank, 5 Watts, 140 ; Trimble's Ap., 6 Watts, 133; Robinson's Ap., 36 Pa. 81; Souder's Ap., 57 Pa. 498.

A judgment confessed for a sum greater than is due is prima facie fraudulent: Benson's Ap., 48 Pa. 159; Clark v. Douglas, 62 Pa. 408, 417.

If this appeal was taken in accordance with the statutes as in other cases, when this court's writ of certiorari sur appeal was filed in the lower court, it superseded all further proceedings there. By it the record was removed into this court, and there was nothing left in the lower court upon which the court below could enter a valid decree. A writ of error or certiorari is a supersedeas at common law: Ewing v. Thompson, 43 Pa. 372.

The act of June 16, 1836, § 7, P. L. 762, only changed the common law by providing that execution should not be stayed unless recognizance was given with sufficient sureties conditioned " to prosecute the writ with effect and to pay the defendant damages and costs."

*George C. Wilson,* for appellee.—An appeal not having been taken from the decree of distribution within twenty days, this proceeding should be quashed : Providence Co. v. Chase, 108 Pa. 319.

A chief object of the act of 1846 was to prevent frivolous applications and to confer power upon the court to determine whether any material facts were in dispute : Providence Co. v. Chase, 108 Pa. 323.

Under § 87 of the act of June 16, 1836, as amended by the act of April 20, 1846, a party is not entitled to an issue upon a mere allegation without evidence or against the evidence : Knight's Ap., 19 Pa. 494.

Plaintiff's judgment was proper to secure him in the liability which he has assumed. That he has not actually paid the money matters not. He may have his judgment, and not only his judgment, but his execution : Miller v. Howry, 3 P. & W. 374; Ardesco Oil Co. v. Mining Co., 66 Pa. 374; Balph v. Rynd, 25 Pitts. L. J. 45 ; Stewart v. Stocker, 1 Watts, 135; Lyle v. Ducomb, 5 Bin. 585; Bamford v. Keefer, 68 Pa. 391.

Nor is there anything in any of the cases cited by appellants that conflicts with the principle laid down in our cases. Bichel v. Rank, 5 Watts, 140, and Trimble's Ap., 6 Watts, 133, were under the original act of 1836, and before the passage of the supplementary legislation had for its chief object " the prevention of frivolous applications : " Providence v. Chase, 108 Pa. 323.

Other cases cited by appellant's counsel, Dormer v. Brown. 72 Pa. 407; Benson's Ap., 48 Pa. 159, and Clark v. Douglass, 62 Pa. 408, go no further than this, that if a judgment be fraudulently confessed and petitioner's affidavit shall set forth the nature and character of the fraud, then the court shall determine whether such issue shall be granted.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893 :
The first specification alleges that the court below erred in

refusing an issue as prayed for in appellant's petition. The appellant relies on the act of April 20, 1846, P. L. 411. That portion of it, which affects this case, is as follows: " Provided, that before an issue shall be directed upon the distribution of money arising from sales under execution, or orphans' court sales, the applicants for such issue shall make affidavit that there are material facts of dispute therein, and shall set forth the nature and character thereof; upon which affidavit the court shall determine whether such issue shall be granted, subject to a writ of error or appeal by such applicant, if the issue be refused, in like manner as in other cases in which such suit now lies."

Under this act it is plain that it is the duty of the court below to determine whether the facts in dispute are material, and are sufficiently set forth, and if they are not so, to refuse the issue.

If the facts on which this issue were demanded are correctly set forth in the affidavits they would certainly indicate fraud on the part of Schmertz. But conceding that he is a rogue and that his purchases of goods were made with intent to cheat his creditors, it is necessary to connect the plaintiff, Loeffler, with the fraud, before he can be affected. This has not been made to appear. It is not denied that he was a creditor of Schmertz, and the only ground on which the judgment held by him was seriously attacked is that it was given for a larger amount than was necessary to cover the liabilities of Loeffler for Schmertz. The learned judge below finds that at the time the judgment of $100,000 was given, June 13, 1891, the claims and liabilities of said Loeffler for said Schmertz amounted to $101,616.66. It is not needed that we should go into the items of which this sum was composed, as the learned judge below has given sufficient reasons for his refusal to award an issue.

Judgment affirmed.